IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

STEVEN MALINOWSKI, et al.,         *

    Plaintiffs,                    *

    v.                             *    CIVIL NO.: WDQ-14-917

THE LICHTER GROUP, LLC, et al.,    *

    Defendants.                    *

\* \* \* \* \* \* \* \* \* \* \* \* \*

MEMORANDUM OPINION

Steven Malinowski, and others,[1] sued The Lichter Group, LLC ("Lichter"), and others,[2] for violating Section 406(a) of the

---

[1] Steven Malinowski, James E. Miley, Ray Dotzler, Andrew L. Frantz, and Wayne P. McMillen (the "Plaintiffs"), sued "on behalf of themselves and all other similarly situated Class members," and in their individual and personal capacities. ECF No. 24-2 ¶¶ 38, 40. The Class is defined as:

> [a]ll present and former truck drivers, managers[,] and supervisors employed by Trojan Horse, Ltd[.], who were participants in the Trojan Horse Ltd. 401(k) Plan ("Plan") and sustained economic loss during the applicable statutory period, as a result of [Lichter's] negligent misrepresentations and professional negligence in acting as the Plan auditor and/or [Lichter's] knowing participation in transactions expressly prohibited under § 406(a) of ERISA, 29 U.S.C. § 1106(a).

Id. ¶ 41.

[2] In the original complaint, the Plaintiffs sued Lichter, Ascensus, Inc. ("Ascensus"), Cambridge Investment Research, Inc. ("Cambridge Investment"), and the Trojan Horse Ltd. 401(k) Plan (the "Plan")(collectively, the "Defendants"). ECF No. 1. The proposed amended complaint dismisses all claims against Ascensus

Employee Retirement Income Security Act ("ERISA")[3], and for state law negligent misrepresentation. Pending is the Plaintiffs' motion for leave to amend the complaint, ECF No. 24. No hearing is necessary. Local Rule 105.6 (D. Md. 2014). For the following reasons, the Plaintiffs motion will be granted in part and denied in part. Additional briefing on diversity jurisdiction will be ordered before the Court addresses the proposed state law claim.[4]

---

and Cambridge Investment. ECF Nos. 24 at 2; 24-2. The Plan was sued under Fed. R. Civ. P. 19(a) "solely to assure that complete relief can be granted." ECF No. 24-2 ¶ 18.

[3] 29 U.S.C. § 1106(a)(1) (2012).

[4] Also pending are Lichter's, Cambridge Investment's, and Ascensus's motions to dismiss the original complaint. ECF Nos. 13, 15, 17. Because the Court will grant the Plaintiffs' motion insofar as it voluntarily dismisses claims against Ascensus and Cambridge Investment, ECF No. 24 at 2, their motions to dismiss will be denied as moot. Until the Court receives briefing on diversity between the parties, and thus may resolve the Plaintiffs' motion for leave to amend the complaint to add a state law negligence claim, Lichter's motion to dismiss, or for summary judgment on, the original complaint, ECF No. 13, will remain pending.

I.  Background

   A.  Facts[5]

Trojan Horse, Ltd. ("Trojan Horse") is a mail transportation contractor, providing mail services for the U.S. Postal Service under the McNamara-O'Hara Service Contract Act[6] ("SCA").  ECF No. 24-2 ¶ 19.  Malinowski was employed by Trojan Horse as a Manager/Supervisor at its Bethpage, New York facility.  Id. ¶ 6.  Miley, Dotzler, Frantz, and McMillen were employed as Trojan Horse truck drivers.  Id. ¶¶ 7-14.  Lichter is a Maryland limited liability company that provides certified public accounting and business consulting services.  Id. ¶¶ 15-16.

The SCA required Trojan Horse to establish benefits for the Plaintiffs and putative class members that included "'pensions on retirement or death' or equivalents."  Id. ¶ 21.  On January

---

[5] The facts are from the amended complaint, ECF No. 24-2, and documents incorporated by reference therein, ECF Nos. 13-8, 13-11.  "It is well settled that an amended pleading supersedes the original pleading . . . ."  Blount v. Carlson Hotels, 3:11CV452-MOC-DSC, 2011 WL 6098697, at *1 (W.D.N.C. Dec. 6, 2011) (citing Young v. City of Mount Ranier, 238 F.3d 567, 573 (4th Cir. 2001) ("The general rule . . . is that an amended pleading supersedes the original pleading, rendering the original pleading of no effect.")).  Under Fed. R. Civ. P. 10(c), "the complaint is deemed to include any . . . documents incorporated in it by reference."  Danik v. Hous. Auth. of Baltimore City, 396 F. App'x 15, 16 (4th Cir. 2010) (unpublished) (per curiam) (quoting Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47 (2d Cir. 1991)).

[6] 41 U.S.C. §§ 6701, et seq. (2012).

1, 2009, Trojan Horse established the Plan: a "single employer Plan, with a Trust Plan funding and benefit arrangement." *Id.* ¶¶ 22-23.[7] Trojan Horse administered the Plan. *Id.* ¶¶ 26-27. Brian Hicks was Plan Administrator and a Trustee. *Id.* ¶ 28.

Trojan Horse retained Lichter, which "held itself out as experts in performing audits of Employee Benefit Plans," to audit the Plan's December 31, 2010 and December 31, 2011 financial statements (respectively, the "2010 audit" and "2011 audit"). *Id.* ¶¶ 31, 52, 53, 92.[8] Lichter audited "statement[s] of net assets available" for the Plan as of December 31, 2009 and December 31, 2010. *Id.* ¶ 56. It also "prepared and approved Form 5500[s][9] for Plan years 2009, 2010, and 2011." *Id.* ¶¶ 33, 103.[10]

---

[7] "The Plan was not subject to collective bargaining." ECF No. 24-2 ¶ 24.

[8] Lichter had received $10,000 per audit, plus out-of-pocket expenses, from Plan assets. *Id.* ¶¶ 32, 94. Those payments were not reported on the Form 5500s. *Id.* ¶¶ 99-105.

[9] The Form 5500 is an "Annual Return/Report of Employee Benefit Plan." 29 C.F.R. § 2520.103-1(b)(1)(2013); *see also* U.S. Department of Labor, *Form 5500 Series*, http://www.dol.gov/ebsa/5500main.html (last visited Jan. 15, 2015) ("[T]he Form 5500 Series forms [satisfy] annual reporting requirements under Title I and Title IV of ERISA and under the Internal Revenue Code.").

[10] However, the Letters of Engagement referenced in the amended complaint state that "[Trojan Horse has] not engaged [Lichter] to prepare or review the Plan's Form 5500 filing with the Internal Revenue Service and Department of Labor, however, the audited financial statements of the Plan are required to be filed with the Form 5500. Professional standards require that

4

In a January 7, 2011 Letter of Engagement prepared in connection with the 2010 audit, Lichter noted, "You acknowledge that the Form 5500 for the year ended December 31, 2009, was filed without the required financial statements and auditor's report attached."  Id. ¶¶ 54-55.[11]

Lichter's December 31, 2010 Financial Report ("2010 Financial Report") stated that "Plan contributions totaled $1,427,885" for the year ending December 31, 2010.  Id. ¶ 58.  That same report stated that, as of December 31, 2009, the Plan's fair value of assets was $464,866, and that, as of December 31, 2010, the Plan's fair value of assets was $1,824,702.  Id. ¶¶ 59, 60.  The 2010 Form 5500 reported that the Plan's fair value of assets, as of December 31, 2010, was $1,900,604.  Id. ¶ 61.  Lichter "later reported [that] the fair value of assets in the Plan, as of December 31, 2010, [was] $1,901,143."  Id. ¶ 62.

The 2010 Financial Report further stated that:

> During 2010 and 2009, [Trojan Horse] inadvertently failed to deposit $5,268 and $539, respectively, of participant deferrals within the required time frame as stated by the [Department of Labor ("DOL")].

---

we read the Plan's Form 5500 prior to its filing."  ECF Nos. 13-8 at 13, 13-11 at 16.

[11] An identical Letter of Engagement was prepared in connection with the 2011 audit.  ECF No. 24-2 ¶¶ 67-68.  Both Letters of Engagement informed Trojan Horse that Lichter's fee was "$10,000, plus out-of-pocket expenses."  ECF Nos. 13-8 at 13, 13-11 at 16.

> [Trojan Horse] will calculate lost earnings and remit them to the Plan in 2011. Also, [Trojan Horse] will file Form 5330[12] and pay the applicable excise tax. The excise payment will be made from [Trojan Horse's] assets.

*Id.* ¶ 66.

Lichter's October 31, 2012 Financial Report ("2012 Financial Report"), prepared in connection with the 2011 audit, stated that "timeliness and consistency of remitting contributions to the [Plan]" were discussed with Trojan Horse, identified "significant deficiencies" in the Plan's "internal control," and noted that Trojan Horse was "several quarters" behind in remitting employer contributions. *Id.* ¶¶ 69-70.

On December 31, 2011, the Plan had "reported net assets of approximately $2,737,493 and 329 participants." *Id.* ¶ 25. However, as of December 31, 2011, Trojan Horse had failed to remit $730,128 in Plan contributions. *Id.* ¶ 73. The 2011 Form 5500, filed in May 2013, "failed to indicate that for the Plan years 2009 and 2010, the Plan fiduciaries had failed to satisfy contribution arrearages; failed to calculate lost earnings and remit them to the Plan in 2011; and failed to file Form 5330 and pay the applicable excise tax from [Trojan Horse's] assets." *Id.* ¶ 72. The 2011 Form 5500 Schedule H, governing "Delinquent

---

[12] The Form 5330 is filed concurrently with an excise tax imposed on persons "who engage in prohibited transactions with employee retirement benefit plans." U.S. Department of Labor, *Voluntary Compliance Guidelines*, http://www.dol.gov/ebsa/oemanual/cha34.html (last visited Jan. 15, 2015).

Participant Contributions," reported contribution arrearages as $63,994 for 2011, $5,268 for 2010, and $539 for 2009, $660,327 less than the required $730,128. *Id.* ¶ 74.

In the 2011 Form 5500, Lichter misrepresented the Plan's assets in 2011, and that "the Plan had not failed to provide any benefit when due," "no professional fees had been paid from Plan assets," and "there were no nonexempt transactions with any party in interest." *Id.* ¶¶ 76-79.

Lichter knew that Plan participants, including the Plaintiffs, "were intended recipients of" the Form 5500s and audit reports, and that they would rely on them to determine whether the Plan was properly administered. *Id.* ¶¶ 64-65, 85-88. Lichter "failed to report to Plan participants, any evidence of fiduciary breach, malfeasance, or fraud." *Id.* ¶ 80. Plan participants "sustained significant economic loss" as a result of Lichter's breach of its duty of care. *Id.* ¶¶ 89-90.

The Plaintiffs allege that Lichter "provided professional services to protect . . . Hicks, in his individual capacity," and "made negligent misrepresentations in [Form 5500s] to shield Hicks from personal liability and criminal sanctions." *Id.* ¶¶ 97-99.

B.   Procedural History

On March 25, 2014, the Plaintiffs filed a class action complaint, suing the Defendants for breach of fiduciary and

statutory duties under ERISA. ECF No. 1 at 12-23. On May 7, 2014, Lichter moved to dismiss the complaint, or for summary judgment. ECF No. 13. On May 16, 2014, Ascensus and Cambridge Investment moved to dismiss the complaint. ECF Nos. 15, 17.

On June 27, 2014, the Plaintiffs moved for leave to file an amended complaint, which dismissed all claims against Ascensus and Cambridge Investment and the breach of fiduciary duty claim against Lichter, and added a negligent misrepresentation claim against Lichter. ECF No. 24.[13] That same day, the Plaintiffs opposed Lichter's motion. ECF No. 25. On July 11, 2014, Lichter replied to the Plaintiffs' opposition, and opposed the Plaintiffs' motion for leave to amend the complaint. ECF Nos. 27, 28.[14] On July 25, 2014, the Plaintiffs replied. ECF No. 29.

II. Analysis

A. Motion for Leave to Amend the Complaint

Federal Rule of Civil Procedure 15(a)(2) instructs that leave to amend should be freely given when justice requires. Leave should be denied only when amendment has been unduly delayed, or would unduly prejudice the opposing party, amount to

---

[13] The amended complaint has two causes of action: negligent misrepresentation (Count One), and prohibited transactions under ERISA (Count Two). ECF No. 24-2.

[14] Lichter's opposition incorporated by reference an argument about prohibited transactions made in its reply to Plaintiffs' opposition to its motion to dismiss, or for summary judgment. See ECF Nos. 28 at 2 n.1, 27.

futility, or reward the movant's bad faith. *Steinburg v. Chesterfield Cnty. Planning Comm'n*, 527 F.3d 377, 390 (4th Cir. 2008); *Equal Rights Ctr. v. Niles Bolton Associates*, 602 F.3d 597, 603 (4th Cir. 2010); *Deasy v. Hill*, 833 F.2d 38, 40 (4th Cir. 1987).

Lichter asserts that the Plaintiffs' amended complaint would be futile. ECF No. 28 at 2. An amendment is futile if it would fail to withstand a motion to dismiss. *See Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995). "[C]onjecture about the merits of the litigation" should not be entertained in a motion for leave to amend unless "a proposed amendment may clearly be seen to be futile," *Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir. 1980), such as when "the proposed amended complaint fails to state a claim," *Katyle v. Penn Nat'l Gaming Inc.*, 637 F.3d 462, 471 (4th Cir. 2011).

1. ERISA Claim

Under ERISA section 406(a), "[a] fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect . . . transfer to, or use by or for the benefit of a party in interest, of any assets of the plan." 29 U.S.C. § 1106(a)(1)(D).[15] A "fiduciary" is an "administrator,

---

[15] Notwithstanding the text of section 406(a) barring the fiduciary from engaging in certain transactions, ERISA provides

officer, trustee, or custodian." *Id.* § 1002(14)(A). A "party in interest" is "a person [that provides] services to such plan." *Id.* § 1002(14)(B).

The Plaintiffs allege that Lichter was a party in interest because it provided auditing services, and Hicks, as Plan Administrator, was a fiduciary. ECF No. 24-2 ¶¶ 28, 92-93. Because Hicks paid Lichter's fee for the 2010 and 2011 audits from Plan assets, the Plaintiffs allege that Lichter engaged in a prohibited transaction. *Id.* ¶¶ 32, 94, 100-01.

Lichter asserts that it did not engage in a prohibited transaction because its fees were necessary and reasonable. ECF No. 27 at 3 & n.2.[16] "[S]ervices necessary for the establishment

---

a cause of action against non-fiduciary parties-in-interest that participate in a prohibited transaction. *See Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 241 (2000); *see also* 29 U.S.C. § 1132 ("A civil action may be brought . . . by a participant, beneficiary, or fiduciary . . . to obtain . . . appropriate equitable relief (i) to redress . . . violations or (ii) to enforce any provisions of this subchapter or the terms of the plan . . . .").

[16] Lichter's opposition to the Plaintiffs' motion for leave to amend incorporated by reference its argument opposing the prohibited transaction claim addressed in its reply to the Plaintiffs' opposition to the Defendants' motion to dismiss, or for summary judgment, ECF No. 27. *See* ECF No. 28 at 2 n.2. That reply contains a footnote stating that its argument about fee reasonableness will be addressed in its opposition to the Plaintiffs' motion for leave to amend, ECF No. 28, which, as stated above, it did not do. *See* ECF No. 27 at 3 n.2. Nevertheless, because Lichter generally "denie[d] all wrongdoing" in connection with the prohibited transaction claim, *id.*, the Court will consider the assertion as an argument that the fee was reasonable.

or operation of the plan," are exempt from § 1106, "if no more than reasonable compensation is paid therefor." *Id.* § 1108(b)(2). The Court must decide whether the Plaintiffs' amended complaint alleges unreasonableness and unnecessariness sufficient to survive a motion to dismiss, thus avoiding denial of its motion for leave to amend based on futility. *See Perkins*, 55 F.3d at 917.

To survive a motion to dismiss, the plaintiff must do more than "plead[] facts that are 'merely consistent with a defendant's liability;'" the facts pled must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Twombly*, 550 U.S. at 557). The Court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Kloth v. Microsoft Corp.*, 444 F.3d 312, 319 (4th Cir. 2006) (*quoting Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir.2000)).

The Plaintiffs allege--in a conclusionary fashion--that Lichter's fee was unreasonable. ECF No. 24-2 ¶ 95 ("Lichter's fees were not reasonable in amount."). Although unclear, viewing the amended complaint in the light most favorable to the Plaintiffs, the allegations that Lichter failed to disclose its fees on the Form 5500s, or as required by ERISA section 408(b)(2), may provide additional grounds for finding the fees

unreasonable. *Id.* ¶¶ 104-05. ERISA section 408(b)(2) provides that service providers must disclose compensation paid by an employee benefit plan to a plan fiduciary. *See* 29 C.F.R. § 2550.408b-2(c)(1)(iv).

When testing the sufficiency of a complaint, courts may "consider documents attached to the complaint" under Fed. R. Civ. P. 10(c), provided they are "integral and authentic." *See Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). Fed. R. Civ. P. 10(c) provides that a "statement in a pleading may be adopted by reference elsewhere in . . . any other pleading or motion," and "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." "Incorporation by reference under Rule 10(c) must be direct and explicit." *Hinton v. Trans Union, LLC*, 654 F. Supp. 2d 440, 446-47 (E.D. Va. 2009), *aff'd* 382 F. App'x 256 (4th Cir. 2010).

Here, the Plaintiffs' amended complaint explicitly references "Doc. 13-8, pg. 13" and "Doc. 13-11, pg. 16," which are pages in the Letters of Engagement between Lichter and Trojan Horse. *See, e.g.*, ECF No. 24-2 ¶ 94.[17] Unlike *Hinton's* "wholesale incorporation . . . of a superseded version of that

---

[17] The party seeking to incorporate by reference a prior pleading need not have filed that pleading. *Fed. Nat. Mortgage Ass'n v. Cobb*, 738 F. Supp. 1220, 1226-27 (N.D. Ind. 1990). The Letters of Engagement were attached to Lichter's motion to dismiss the original complaint. ECF Nos. 13-8, 13-11.

same pleading" which failed Rule 10(c)'s "clarity requirement," 645 F. Supp. 2d at 446-47, the Plaintiffs referenced specific pages of the Letters of Engagement, and were, thus, sufficiently clear.

Those pages are "integral" to the amended complaint because they detail--and, according to the Plaintiffs, support--the allegedly prohibited transaction at issue. *Cf. Green Ventures Int'l, LLC, P'ship v. Guttridge*, No. 2:10-CV-01709-MBS, 2010 WL 5019363, at *4 (D.S.C. Dec. 1, 2010) (emails attached to complaint were integral to fraud allegations). Documents contemplated by Rule 10(c) include "contracts, notes, and other writing[s] on which [a party's] action or defense is based," but not affidavits. *Rose v. Bartle*, 871 F.2d 331, 339 n. 3 (3d Cir. 1989) (alterations in original), *quoted in Occupy Columbia v. Haley*, 738 F.3d 107, 116 (4th Cir. 2013). The Letters of Engagement are writings that the Plaintiffs base their action on, and neither party disputes the Letters' authenticity.[18]

The Letters of Engagement pages referenced by the Plaintiffs show that Lichter informed Hicks about its fees, thus complying with ERISA section 408(b)(2), and was not hired to prepare the Form 5500s that it allegedly failed to disclose its

---

[18] The amended complaint, and Lichter's opposition to the motion for leave to amend, are replete with citations to, and quotations from, the Letters of Engagement. *See* ECF Nos. 24-2 ¶¶ 32,36,54-55,57,67,69-70,73,94; 28 at 4-5, 15-16.

fees on. *See* ECF Nos. 13-8 at 13, 13-11 at 16. When the "bare allegations of the complaint" conflict with an exhibit incorporated under Rule 10(c), "the exhibit prevails." *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991). Accordingly, the Plaintiffs' strained, and largely conclusionary allegation, that Lichter's fees were unreasonable, would not survive a motion to dismiss.

As to whether the services were necessary for the Plan's operation, the Plaintiffs make conflicting allegations. They allege that Trojan Horse hired Lichter to perform the 2010 and 2011 audits, and that it did so. *Id.* ¶¶ 31, 92. The Plaintiffs also allege that Lichter provided (unnecessary) services to protect Hicks from personal liability and criminal sanctions. *Id.* ¶¶ 97-99.

The Plaintiffs' allegation that Lichter's services were unnecessarily rendered to prevent Hicks's personal liability is unreasonable in light of other allegations that Lichter was retained, and paid, to audit the Plan, and Trojan Horse and Lichter entered into Letters of Engagement for that purpose. ECF No. 24-2 ¶¶ 31, 32, 54-55, 67-68. Under 29 U.S.C. § 1023(a)(3)(A), employee benefit plan administrators are required to engage a "qualified public accountant" to audit "financial statements" and "other books and records of the plan." Because retaining Lichter--or any qualified public

accountant--was legally mandated, it was undoubtedly "necessary" under § 1108(b)(2). Thus, the facts pled do not "allow[] the court to draw the reasonable inference that" Lichter's services were unnecessary. *See Ashcroft*, 556 U.S. at 678; *Kloth*, 444 F.3d at 319. Accordingly, the Plaintiffs have failed to state a claim under ERISA section 406(a), and its amendment would be futile.

    2.    Negligent Misrepresentation

Because the Court will deny the Plaintiffs' motion for leave to amend its complaint to add the ERISA section 406(a) claim, unless there is complete diversity between the parties, the Court lacks subject matter jurisdiction over the state law claim. The amended complaint states: "At all relevant times, [Lichter] was a limited liability company created and organized under the laws of the State of Maryland, with its principal offices located in Baltimore, MD." *Id.* ¶ 15. A limited liability company is a citizen of the states of which its members are citizens. *See Gen. Tech. Applications, Inc. v. Exro Ltds*, 388 F.3d 114, 120 (4th Cir. 2004). The amended complaint does not allege the citizenship of Lichter's members.

Accordingly, before reaching the merits, the Court will order the Plaintiffs to state the basis of the Court's diversity jurisdiction. If the Plaintiffs fail to do so within the time provided, the Court will deny their motion for leave to amend to

add the state law claim, and will resolve Lichter's motion to dismiss the original complaint.

III. Conclusion

For the reasons stated above, the Plaintiffs' motion for leave to amend its complaint will be granted in part and denied in part. Cambridge Investment's and Ascensus's motions to dismiss the complaint will be denied as moot.

___2/26/14___  
Date

_____  
William D. Quarles, Jr.  
United States District Judge