IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

STEVEN MALINOWSKI, *et al.*,                    *

       Plaintiffs,                                *

          v.                                       *        CIVIL NO.: WDQ-14-917

                           *

THE LICHTER GROUP, LLC, *et al.*,               *

       Defendants.                                *

*     *     *     *     *     *     *     *     *     *     *     *     *

MEMORANDUM OPINION

Steven Malinowski, and others,[1] sued The Lichter Group, LLC

("Lichter"), and others,[2] for violating the Employee Retirement

---

[1] Steven Malinowski, James E. Miley, Ray Dotzler, Andrew L.
Frantz, and Wayne P. McMillen (the "Plaintiffs"), sued "on
behalf of themselves and all other similarly situated Class
members," and in their individual and personal capacities.  ECF
No. 24-2 ¶¶ 38, 40.  The Class is defined as:

> [a]ll present and former truck drivers, managers[,]
> and supervisors employed by Trojan Horse, Ltd[.], who
> were participants in the Trojan Horse Ltd. 401 (k)
> Plan ("Plan") and sustained economic loss during the
> applicable statutory period, as a result of
> [Lichter's] negligent misrepresentations and
> professional negligence in acting as the Plan auditor
> and/or [Lichter's] knowing participation in
> transactions expressly prohibited under § 406(a) of
> ERISA, 29 U.S.C. § 1106(a).

*Id.* ¶ 41.

[2] In the original complaint, the Plaintiffs sued Lichter,
Ascensus, Inc. ("Ascensus"), Cambridge Investment Research, Inc.
("Cambridge Investment"), and the Trojan Horse Ltd. 401(k) Plan
(the "Plan")(collectively, the "Defendants").  ECF No. 1.  The

Income Security Act ("ERISA").[3]  The Plaintiffs moved for leave to amend the complaint to dismiss claims against Ascensus and Cambridge Investment,[4] change the ERISA provision at issue in its claim against Lichter, and add a state negligent misrepresentation claim.  ECF No. 24.

The Court previously granted the Plaintiffs' motion as to the dismissal of Ascensus and Cambridge Investment, denied it as to the amended ERISA claim against Lichter, and requested briefing on whether the Court had diversity jurisdiction over the state claim.  ECF No. 31.  Having received the Plaintiffs' briefing, ECF No. 32, the remainder of the Plaintiffs' motion for leave to amend, ECF No. 24, is ready for review.  No hearing is necessary.  Local Rule 105.6 (D. Md. 2014).  For the following reasons, the Court will grant the Plaintiffs' motion for leave to amend to add a state negligent misrepresentation claim.

---

Plan was sued under Fed. R. Civ. P. 19(a) "solely to assure that complete relief can be granted."  ECF No. 24-2 ¶ 18.

[3] 29 U.S.C. § 1106(a)(1)(2012).

[4] The proposed amended complaint dismisses all claims against Ascensus and Cambridge Investment.  ECF Nos. 24 at 2; 24-2.

I.   Background

   A.   Facts[5]

   Trojan Horse, Ltd. ("Trojan Horse") is a mail
transportation contractor, providing mail services for the U.S.
Postal Service under the McNamara-O'Hara Service Contract Act[6]
("SCA").   ECF No. 24-2 ¶ 19.   Malinowski was employed by Trojan
Horse as a Manager/Supervisor at its Bethpage, New York
facility.   *Id.* ¶ 6.   Miley, Dotzler, Frantz, and McMillen were
employed as Trojan Horse truck drivers.   *Id.* ¶¶ 7-14.   Lichter
is a Maryland limited liability company that provides certified
public accounting and business consulting services.   *Id.* ¶¶ 15-
16.

   The SCA required Trojan Horse to establish benefits for the
Plaintiffs and putative class members that included "'pensions

---

[5] The facts are from the amended complaint, ECF No. 24-2, and
documents incorporated by reference therein, ECF Nos. 13-8, 13-
11.   Under Fed. R. Civ. P. 10(c), "the complaint is deemed to
include any . . . documents incorporated in it by reference."
*Danik v. Hous. Auth. of Baltimore City*, 396 F. App'x 15, 16 (4th
Cir. 2010) (unpublished) (per curiam) (*quoting Cortec Indus.,
Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991)).
   "It is well settled that an amended pleading supersedes the
original pleading . . . ."   *Blount v. Carlson Hotels*, 3:11CV452-
MOC-DSC, 2011 WL 6098697, at *1 (W.D.N.C. Dec. 6, 2011) (*citing
Young v. City of Mount Ranier*, 238 F.3d 567, 573 (4th Cir. 2001)
("The general rule . . . is that an amended pleading supersedes
the original pleading, rendering the original pleading of no
effect.")).   Because the Court will grant leave to amend,
Lichter's motion to dismiss the original complaint, ECF No. 13,
will be denied as moot.

[6] 41 U.S.C. §§ 6701, *et seq.* (2012).

on retirement or death' or equivalents." *Id.* ¶ 21.  On January 1, 2009, Trojan Horse established the Plan: a "single employer Plan, with a Trust Plan funding and benefit arrangement." *Id.* ¶¶ 22-23.  Trojan Horse administered the Plan. *Id.* ¶¶ 26-27.

Trojan Horse retained Lichter, which "held itself out as experts in performing audits of Employee Benefit Plans," to audit the Plan's December 31, 2010 and December 31, 2011 financial statements (respectively, the "2010 audit" and "2011 audit"). *Id.* ¶¶ 31, 52, 53, 92.[7] Lichter audited "statement[s] of net assets available" for the Plan as of December 31, 2009 and December 31, 2010. *Id.* ¶ 56.  It also "prepared and approved Form 5500[s][8] for Plan years 2009, 2010, and 2011." *Id.* ¶¶ 33, 103.[9]

---

[7] Lichter had received $10,000 per audit, plus out-of-pocket expenses, from Plan assets. *Id.* ¶¶ 32, 94.  Those payments were not reported on the Form 5500s. *Id.* ¶¶ 99-105.

[8] The Form 5500 is an "Annual Return/Report of Employee Benefit Plan." 29 C.F.R. § 2520.103-1(b)(1)(2013); *see also* U.S. Department of Labor, *Form 5500 Series*, http://www.dol.gov/ebsa/ 5500main.html (last visited Jan. 15, 2015) ("[T]he Form 5500 Series forms [satisfy] annual reporting requirements under Title I and Title IV of ERISA and under the Internal Revenue Code.").

[9] The Letters of Engagement referenced in the amended complaint indicate that Lichter would read, but not prepare, the Form 5500s prior to their filing with the Internal Revenue Service ("IRS"). ECF Nos. 13-8 at 13, 13-11 at 16.

1.    The 2010 Audit

In a January 7, 2011 Letter of Engagement prepared in connection with the 2010 audit, Lichter noted, "You acknowledge that the Form 5500 for the year ended December 31, 2009, was filed without the required financial statements and auditor's report attached."  *Id.* ¶¶ 54-55.

Lichter audited Trojan Horse's statement of net assets available for the Plan for the years ending December 31, 2009 and December 31, 2010.  *Id.* ¶ 56.  Lichter's December 31, 2010 Financial Report ("2010 Financial Report") stated that "Plan contributions totaled $1,427,885" for the year ending December 31, 2010.  *Id.* ¶ 58.  That same report stated that, as of December 31, 2009, the Plan's fair value of assets was $464,866, and, as of December 31, 2010, the Plan's fair value of assets was $1,824,702.  *Id.* ¶¶ 59, 60.  The 2010 Form 5500 reported that the Plan's fair value of assets, as of December 31, 2010, was $1,900,604.  *Id.* ¶ 61.  Lichter "later reported [that] the fair value of assets in the Plan, as of December 31, 2010, [was] $1,901,143."  *Id.* ¶ 62.[10]

---

[10] The Plaintiffs allege that Lichter "knowingly made material negligent misrepresentations about Plan contributions and the fair value of" Plan assets as of December 31, 2010, that Lichter knew that the Plaintiffs were intended recipients of, and would rely on, the 2010 Financial Report and Form 5500.  ECF No. 24-2 ¶¶ 63-65.

The 2010 Financial Report further stated that:

> During 2010 and 2009, [Trojan Horse] inadvertently
> failed to deposit $5,268 and $539, respectively, of
> participant deferrals within the required time frame
> as stated by the [Department of Labor ("DOL")].
> [Trojan Horse] will calculate lost earnings and remit
> them to the Plan in 2011.  Also, [Trojan Horse] will
> file Form 5330[11] and pay the applicable excise tax.
> The excise payment will be made from [Trojan Horse's]
> assets.

*Id.* ¶ 66.

    2.    The 2011 Audit[12]

Lichter's October 31, 2012 Financial Report ("2012

Financial Report"), prepared in connection with the 2011 audit,

stated that "timeliness and consistency of remitting

contributions to the [Plan]" were discussed with Trojan Horse,

identified "significant deficiencies" in the Plan's "internal

control," and noted that Trojan Horse was "several quarters"

behind in remitting employer contributions.  *Id.* ¶¶ 69-70.

On December 31, 2011, the Plan had "reported net assets of

approximately $2,737,493 and 329 participants."  *Id.* ¶ 25.

However, as of December 31, 2011, Trojan Horse had failed to

remit $730,128 in Plan contributions.  *Id.* ¶ 73.   The 2011 Form

---

[11] The Form 5330 is filed concurrently with an excise tax imposed
on persons "who engage in prohibited transactions with employee
retirement benefit plans."  U.S. Department of Labor, *Voluntary
Compliance Guidelines*, http://www.dol.gov/ebsa/oemanual
/cha34.html (last visited Jan. 15, 2015).

[12] The 2011 audit was performed pursuant to a December 22, 2011
Letter of Engagement, which was identical to the January 7, 2011
Letter of Engagement.  ECF No. 24-2 ¶¶ 67-68.

5500, filed in May 2013, "failed to indicate that for the Plan years 2009 and 2010, the Plan fiduciaries had failed to satisfy contribution arrearages; failed to calculate lost earnings and remit them to the Plan in 2011; and failed to file Form 5330 and pay the applicable excise tax from [Trojan Horse's] assets." *Id.* ¶ 72.  The 2011 Form 5500 Schedule H, governing "Delinquent Participant Contributions," reported contribution arrearages as $63,994 for 2011, $5,268 for 2010, and $539 for 2009, $660,327 less than the required $730,128.  *Id.* ¶ 74.

In the 2011 Form 5500, Lichter misrepresented the Plan's assets, and that "the Plan had not failed to provide any benefit when due," "no professional fees had been paid from Plan assets," and "there were no nonexempt transactions with any party in interest."  *Id.* ¶¶ 76-79.[13]

Lichter "failed to report to Plan participants, any evidence of fiduciary breach, malfeasance, or fraud," and "failed to adhere to generally accepted auditing standards." *Id.* ¶¶ 80-84.  Lichter knew that the Plaintiffs and Plan participants were intended recipients of, and relied on, Lichter's audit reports and the Form 5500s to determine "whether the Plan was generally operated in accordance with its terms."

---

[13] Lichter allegedly knew that Plan participants, including the Plaintiffs, "were intended recipients of" the Form 5500s and audit reports, and that they would rely on them to determine whether the Plan was properly administered.  *Id.* ¶¶ 64-65, 85-88.

*Id.* ¶¶ 86-88.  The Plaintiffs and Plan participants "sustained significant economic loss" as a result of Lichter's breach of its duty of care.  *Id.* ¶¶ 89-90.

B.  Procedural History

On March 25, 2014, the Plaintiffs filed a class action complaint, suing the Defendants for breach of fiduciary and statutory duties under ERISA.  ECF No. 1 at 12-23.  On May 7, 2014, Lichter moved to dismiss the complaint, or for summary judgment.  ECF No. 13.  On May 16, 2014, Ascensus and Cambridge Investment moved to dismiss the complaint.  ECF Nos. 15, 17.

On June 27, 2014, the Plaintiffs moved for leave to file an amended complaint, which dismissed all claims against Ascensus and Cambridge Investment and the breach of fiduciary duty claim against Lichter, and added a negligent misrepresentation claim against Lichter.  ECF No. 24.[14]  That day, the Plaintiffs opposed Lichter's motion.  ECF No. 25.  On July 11, 2014, Lichter replied to the Plaintiffs' opposition, and opposed the Plaintiffs' motion for leave to amend the complaint.  ECF Nos. 27, 28.  On July 25, 2014, the Plaintiffs replied.  ECF No. 29.

On February 26, 2015, the Court granted in part and denied in part the Plaintiffs' motion for leave to amend.  ECF No. 31.

---

[14] The amended complaint has two causes of action: negligent misrepresentation (Count One), and prohibited transactions under ERISA (Count Two).  ECF No. 24-2.

The Court granted Plaintiffs' dismissal of all claims against Ascensus and Cambridge Investment, but denied the addition of an ERISA section 406(a) claim against Lichter. *Id.* The Court requested briefing on whether it would have subject matter jurisdiction over the remaining state claim. *Id.*[15] On March 4, 2015, the Plaintiffs briefed the Court on its diversity jurisdiction. ECF No. 32.[16]

II.   Analysis

   A.   Motion for Leave to Amend the Complaint

   Federal Rule of Civil Procedure 15(a)(2) instructs that leave to amend should be freely given when justice requires. Leave should be denied only when amendment has been unduly delayed, or would unduly prejudice the opposing party, amount to futility, or reward the movant's bad faith. *Steinburg v. Chesterfield Cnty. Planning Comm'n*, 527 F.3d 377, 390 (4th Cir.

---

[15] The amended complaint had stated that "[a]t all relevant times, [Lichter] was a limited liability company created and organized under the laws of the State of Maryland, with its principal offices located in Baltimore, MD." *Id.* ¶ 15. However, a limited liability company is a citizen of the states of which its members are citizens. *See Gen. Tech. Applications, Inc. v. Exro Ltds*, 388 F.3d 114, 120 (4th Cir. 2004). Because the amended complaint had not alleged the citizenship of Lichter's members, the Court requested jurisdictional briefing.

[16] Plaintiffs are citizens of New York and Pennsylvania. ECF Nos. 24-2 ¶¶ 5-14; 32 at 1. Because Lichter's sole member is a Maryland citizen, ECF No. 32 at 1, Lichter is considered a Maryland citizen, *Gen Tech. Applications, Inc.*, 388 F.3d at 120. Accordingly, there is complete diversity between the parties; as the amount in controversy exceeds $75,000, the Court has diversity jurisdiction under 28 U.S.C. § 1332.

2008); *Equal Rights Ctr. v. Niles Bolton Associates*, 602 F.3d 597, 603 (4th Cir. 2010); *Deasy v. Hill*, 833 F.2d 38, 40 (4th Cir. 1987).

Lichter asserts that the Plaintiffs' amended complaint would be futile.  ECF No. 28 at 2.  An amendment is futile if it would fail to withstand a motion to dismiss.  *See Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995).  "[C]onjecture about the merits of the litigation" should not be entertained in a motion for leave to amend unless "a proposed amendment may clearly be seen to be futile," *Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir. 1980), such as when "the proposed amended complaint fails to state a claim," *Katyle v. Penn Nat'l Gaming Inc.*, 637 F.3d 462, 471 (4th Cir. 2011).

B.   Choice of Law

The Plaintiffs allege that their negligent misrepresentation claim is governed by Maryland law.  ECF No. 24-2 ¶ 3.  Lichter has not addressed what state's law applies, and the sole citation in the relevant part of Lichter's opposition is to a Maryland case.  *See* ECF No. 28 at 12.

When sitting in diversity, a federal court follows the choice-of-law rules of the forum state.  *Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 497 (1941).  Thus, Maryland choice-of-law rules govern.

In tort cases, Maryland applies the *lex loci delicti* rule.
*Philip Morris, Inc. v. Angeletti*, 358 Md. 689, 744, 752 A.2d
200, 230 (2000); *Harte-Hanks Direct Mktg./Baltimore, Inc. v.*
*Varilease Tech. Fin. Grp., Inc.*, 299 F.Supp.2d 505, 526 n. 24
(D. Md. 2004).  Under that rule, "[the] substantive rights of
the parties . . . are to be determined by the law of the state
in which the alleged tort took place." *Angeletti*, 358 Md. at
745, 752 A.2d at 230 (citation omitted).  A tort occurs "where
the injury was suffered, not where the wrongful act took place."
*Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 511 (4th Cir. 1986).

The Plaintiffs allege that they "*and all Plan participants*
sustained significant economic loss and damages."  ECF No. 24-2
¶ 90 (emphasis added).  Named plaintiffs are citizens of New
York and Pennsylvania; accordingly, the law of either of those
states, or the law of any state in which a Plan participant is a
citizen, may apply.  *See Johnson*, 785 F.2d at 511.

Given the "fact-intensive[,] context specific ... [and]
complexity" of the choice-of-law analysis, consideration of what
law governs the Plaintiffs' negligent misrepresentation claim
may be properly deferred until after the parties have engaged in
discovery.  *Banner Life Ins. Co. v. Bonney*, 2:11CV198, 2011 WL
5027498, at *8 (E.D. Va. Oct.21, 2011) (noting that many courts
defer deciding choice-of-law issues until later in the
proceedings after the motion to dismiss stage) (*citing North*

11

*American Technical Svcs ., Inc. v. V.J. Techs, Inc.*, No. 10 CV 1384(AWT), 2011 WL 4538069, at *2 (D. Conn. Sept.29, 2011)); *Cleaning Auth., Inc. v. Neubert*, 739 F.Supp.2d 807, 817–18 (D. Md. 2010) (deferring choice-of-law questions to summary judgment stage).  The Court will apply Maryland law to resolve the pending motion and defer final determination of the choice-of-law issues. *See Nakell v. Liner Yankelevitz Sunshine & Regenstreif, LLP*, 394 F.Supp.2d 762, 768 n. 2 (M.D.N.C. 2005).[17]

C.   The Plaintiffs' Motion

To establish negligence under Maryland law, a plaintiff must plausibly allege: 1) the defendant was under a duty to protect the plaintiff from injury; 2) the defendant breached that duty; (3) the plaintiff suffered actual injury or loss; and (4) the loss or injury proximately resulted from the defendant's breach.  *See Lloyd v. Gen. Motors Corp.*, 916 A.2d 257, 270-71 (Md. 2007); *Valentine v. On Target, Inc.*, 727 A.2d 947, 949 (Md. 1999).

---

[17] If the parties fail to brief the choice-of-law in later stages of these proceedings, the Court will apply Maryland law to resolve the parties' claims under *Chambco, Div. of Chamberlin Waterproofing & Roofing, Inc. v. Urban Masonry Corp.*, 338 Md. 417, 421, 659 A.2d 297, 299 (1995).  *Chambco* holds that, even when another jurisdiction's law clearly controls an issue in the case, if the parties fail to give the Court notice that they intend to rely on a different state's law, the Court, in its discretion, may presume that the other jurisdiction's law is the same as Maryland law and apply Maryland law.  *See, e.g., Danner v. Int'l Freight Sys. of Washington, LLC*, 855 F.Supp.2d 433, 447 (D. Md. 2012) (*citing Chambco*, 338 Md. at 421, 659 A.2d at 299).

As a general rule, "damages for economic loss are not available in a tort action." *Lloyd*, 916 A.2d at 265.  However, when "the failure to exercise due care creates a risk of economic loss only," Maryland courts have imposed tort liability when there is an "intimate nexus between the parties." *100 Inv. Ltd. P'ship v. Columbia Town Ctr. Title Co.*, 60 A.3d 1, 11 (Md. 2013)(*quoting Jacques v. First Nat. Bank of Maryland*, 515 A.2d 756, 759-60 (Md. 1986)).  In the context of accounting services, the "intimate nexus" is present when the defendant knew

> [(1)] that the financial reports were to be used for a particular purpose or purposes; (2) in the furtherance of which a known party or parties was intended to rely; and (3) there must have been some conduct on the part of the [defendant] linking to that party or parties, which evinces the [defendant's] understanding of that party or parties' reliance.

*Farmers Bank of Maryland v. Chicago Title Ins. Co.*, 877 A.2d 1145, 1156 (Md. Ct. Spec. App. 2005) *aff'd sub nom. Chicago Title Ins. Co. v. Allfirst Bank*, 905 A.2d 366 (Md. 2006)(*quoting Walpert, Smullian & Blumenthal, P.A. v. Katz*, 762 A.2d 582 (Md. 2000)).

Lichter does not dispute the existence of the duty; rather, it contends that it did not make misrepresentations, and the Plaintiffs have insufficiently alleged proximate causation.  ECF No. 28 at 7-17.

As to the 2010 audit, the Plaintiffs allege that Lichter's 2010 Financial Report materially understated the fair value of

13

assets held by the Plan.  ECF No. 24-2 ¶¶ 60-63.  As to the 2011

audit, the Plaintiffs allege that Lichter approved the 2011 Form

5500 and attached Schedule H even though it contained several

misrepresentations, such as Trojan Horse's failure to satisfy

contribution arrearages, calculate lost earnings, file the Form

5330, or pay excise taxes.  ECF Nos. 24-2 ¶¶ 72-74.  The

Plaintiffs also allege that the 2011 Form 5500 contained

misrepresentations about contribution arrearages, nonexempt

transactions, Plan assets, provision of benefits, and payment of

professional fees from Plan assets.  *Id.* ¶¶ 75-79.  Lichter

allegedly failed to report "evidence of fiduciary breach,

malfeasance, or fraud," and "failed to adhere to generally

accepted auditing standards."  *Id.* ¶¶ 80-84.

Lichter argues that the Plaintiffs have misconstrued the

Financial Reports and Form 5500s and "lack [] comprehension

[about] the regulatory and financial documents prepared and

filed on behalf of the Plan."  ECF No. 28 at 8-10, 12.  In

support, Lichter attached to its opposition the Form 5500s

actually filed with the IRS and contends that the Plaintiffs'

references to the Form 5500s are inaccurate because the

documents to which they refer are only the schedules that are

attached to the Form 5500s.  ECF Nos. 28 at 8 n.4; 28-1; 28-2.

The Plaintiffs counter Lichter's assertions by attaching to

their reply a Declaration by Bruce D. Pingree, Esquire, an

14

experienced tax lawyer, and "Frequently Asked Questions

["FAQs"] About Reporting Delinquent Participant Contributions on

the Form 5500" from the DOL's website.  *See* ECF Nos. 29-1

(Declaration); 29-2 (Pingree's rèsumé); 29-3 (FAQs).  The

parties' submissions are not appropriate for the Court to

consider in connection with the pending motion;[18] nor should the

Court engage in factual "conjecture about the merits of the

litigation," *Davis*, 615 F.2d at 613.  Although the evidence may

ultimately show that Lichter did not make material

misrepresentations, at this stage, the Plaintiffs have plausibly

alleged that misrepresentations were made.  Because proximate

causation is typically a question reserved for the trier of fact

unless "reasoning minds cannot differ,"[19] the Court will grant

the Plaintiffs' motion for leave to amend the complaint to

allege common law negligent misrepresentation.

---

[18] When testing the sufficiency of a complaint, courts may
"consider documents attached to the complaint" under Fed. R.
Civ. P. 10(c), provided they are "integral and authentic."  *See*
*Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir.
2009).

[19] *See, e.g., Chang-Williams v. United States,* No. DKC-10-0783,
2013 WL 4454597, at *18 (D. Md. Aug.15, 2013); *Pittway Corp. v.
Collins*, 973 A.2d 771, 792 (Md. 2009).

III. Conclusion

For the reasons stated above, the Plaintiffs' motion for leave to amend the complaint will be granted as to the negligent misrepresentation claim.  Lichter's motion to dismiss the original complaint will be denied as moot.


_____3/11/15_____
Date

_____
William D. Quarles, Jr.
United States District Judge